[Cite as *State v. Locke*, 2015-Ohio-3349.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102371**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# CHARLES LOCKE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
VACATED IN PART AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-587363-A

**BEFORE:** Jones, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** August 20, 2015

**ATTORNEYS FOR APPELLANT**

Fernando Mack
323 Lakeside Avenue
Suite 420
Cleveland, Ohio 44113

Edward F. Borkowski, Jr.
P.O. Box 609151
Cleveland, Ohio 44109


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Christopher D. Schroeder
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant, Charles Locke, appeals his sentence for unlawful sexual conduct with a minor, pandering sexually oriented matter involving a minor, and possessing criminal tools. We affirm in part and reverse in part.

{¶2} Locke was a 42-year-old police officer for the city of Cleveland who had sexual intercourse with a 15-year-old girl on multiple occasions and used his cell phone to record his crimes. In 2014, he was charged with two counts of sexual battery, two counts of unlawful sexual conduct with a minor, ten counts of pandering sexually oriented matter involving a minor, and one count of possessing criminal tools. He pleaded guilty to two counts of unlawful sexual conduct with a minor, five counts of pandering sexually oriented matter involving a minor, and possessing criminal tools. The trial court ordered all the terms of incarceration to be served consecutively for a total prison sentence of 19 and one-half years. The court also ordered him to register as a Tier III sex offender.

{¶3} Locke filed a notice of appeal and raises two assignments of error:

I.   The trial court erred by failing to make the necessary findings pursuant to R.C. 2929.14(C)(4) before imposing consecutive sentences.

II.   The trial court erred by failing to address the issue of allied offenses.

**Consecutive Sentences**

{¶4} In his first assignment of error, Locke argues that the trial court did not make the requisite statutory findings under R.C. 2929.14(C)(4) before sentencing him to consecutive sentences and asks that his sentence be modified by this court to concurrent

sentences. The state concedes that the trial court did not make the necessary findings, but argues that the case should be remanded to the trial court for the limited purpose of determining whether consecutive sentences should be imposed and, if so, for the court to make the proper findings.

{¶5} R.C. 2929.14(C)(4) requires a trial court engage in a three-step analysis before it imposes consecutive sentences. First, the court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id*. Second, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Third, the trial court must find that at least one of the following applies:

> (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense;
>
> (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; [or]
>
> (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

{¶6} The court must make the statutory findings as stated above at the sentencing

hearing and incorporate those findings into its sentencing entry. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.

**{¶7}** Here, the trial court stated the following when it sentenced Locke to consecutive terms of imprisonment:

> In fashioning an appropriate sentence for him, for this individual and the charges in this case, the court has to look to Revised Code Section 2929.11 and the overriding purposes of felony sentencing, which is to protect the public from future crime by the offender as well as to punish the offender.
>
> And in attempting to achieve these purposes, the court has to consider the need for incapacitating the offender, as well as deterring the offender and others like him from future crime, and protecting the public, which is basically foremost the court's obligation in this respect.
>
> So in fashioning an appropriate sentence, the court has to look to the seriousness factors pursuant to 2929.12. And in looking at the factors in 2929.12(B), there are several factors that are involved, including the mental injury that has been suffered by the victim in this case; the psychological and economic harm to the victim's family; and in particular the fact that the defendant held a position of public trust in the community, his occupation certainly facilitated this offense.
>
> And in looking at the less serious factors, there are no less serious factors in this case.
>
> So for all of those purposes, I am going to sentence the defendant as to the unlawful sexual conduct with a minor, which is Counts 2 and 6, 2907.04(A), to a term of incarceration of two years each. And as to the five pandering sexually oriented matter involving a juvenile, a term of incarceration on each one of those of three years each. Those sentences will run consecutive to one another. As to the possessing criminal tools, six months. So a total of 15 years on the felony 2s, four years on the felony 3s, and six months on the possessing criminal tools. Those sentences will run consecutive to one another.
>
> And I believe that for all of the reasons that the sergeant has indicated, I do believe that that's an appropriate sentence.

**{¶8}** Although the trial court was not required to use "talismanic words," it must be clear from the record that it actually made the findings required by statute. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659 at ¶ 37.

**{¶9}** We agree with Locke, as conceded by the state, that the trial court failed to make the necessary findings. Locke contends that this court should modify his sentences to concurrent sentences rather than remand his case for resentencing. *See* R.C. 2953.08(G)(2) ("The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.")

**{¶10}** To support his position, Locke cites *Bonnell*, where the court stated that:

> With exceptions not relevant here, if the trial court does not make the factual findings required by R.C. 2929.14(C)(4), then "a prison term, jail term, or sentence of imprisonment *shall* be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). Thus, judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences.

(Emphasis added). *Id.* at ¶ 23.

**{¶11}** But we do not interpret the above paragraph to mean that the appellate court is required to modify an appellant's sentence if the trial court did not make the requisite R.C. 2929.14(C)(4) findings. Rather, the *Bonnell* court was explaining that judicial fact-finding to overcome the statutory presumption of concurrent sentences that had been required under former Ohio law (R.C. 2929.14(E)) was revived by the legislature in R.C. 2929.14(C)(4). *See Bonnell* at ¶ 22-23. In fact, the *Bonnell* court did not modify

Bonnell's sentence from consecutive to concurrent sentences; the court remanded the case to the trial court for resentencing.

{¶12} We believe the best course of action in this case is for the trial court to consider, on remand, whether consecutive sentences are appropriate under R.C. 2929.14(C)(4), and if so, make the required statutory findings on the record at resentencing, and incorporate its findings into the subsequent sentencing entry. *State v. Fowler*, 8th Dist. Cuyahoga No. 101101, 2014-Ohio-5687, ¶ 20.

{¶13} Therefore, we vacate Locke's consecutive sentences and remand this matter to the trial court for a limited resentencing. *See Bonnell* at ¶ 30, 37.

{¶14} The first assignment of error is sustained.

**Allied Offenses**

{¶15} In the second assignment of error, Locke argues that his convictions should have merged for the purposes of sentencing pursuant to R.C. 2941.25.

{¶16} R.C. 2941.25(A) provides that where the same conduct by a defendant "can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." But where the conduct constitutes two or more offenses of dissimilar import, or where the conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶17} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court created a two-part test to determine if offenses should merge. The first prong requires that the court determine if the multiple offenses "were committed by the same conduct." *Id.* at ¶ 47. The second prong is whether "it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other." *Id.* If both of these question are answered affirmatively then the offenses should be merged. But "if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶ 51.

{¶18} In *State v. Ruff*, Slip Opinion No. 2015-Ohio-995, ¶ 31, the Ohio Supreme Court recently clarified that courts are to consider three questions when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25: (1) Were the offenses dissimilar in import or significance? (2) Were the offenses committed separately? or (3) Were the offenses committed with separate animus or motivation? If a court can answer in the affirmative to any of the questions, then separate convictions are permitted. *Id.* Thus, the trial court must consider a defendant's conduct, the animus, and the import. *Id.*

{¶19} But the Ohio Supreme Court also recently determined that the issue of allied

offenses must be raised at the trial court level. In *State v. Rogers,* Slip Opinion No. 2015-Ohio-2459, ¶ 3, the court held that the failure to raise the issue of allied offenses of similar import forfeits all but plain error. Such error "is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Id.*

{¶20} Crim.R. 52(B) affords appellate courts discretion to correct plain errors or defects affecting substantial rights even if the accused failed to bring those errors to the trial court's attention. *Id.* at ¶ 22. But, the court determined, if a defendant fails to raise the issue at the trial court level, the burden is solely on that defendant, not on the state or the trial court, to "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus." *Id.* If a defendant fails to make the showing, then "the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

{¶21} The court noted that "even if the error is obvious, it must have affected substantial rights, and * * * 'the trial court's error must have affected the outcome of the trial.'" *Id.* The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice — the same deferential standard for reviewing ineffective assistance of counsel claims. *Id.*, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

{¶22} The court further cautioned that even if the defendant is able to make the

necessary showing that the trial court committed plain error that affected the outcome of the proceedings, the reviewing court is not required to correct it; "we have 'admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.'" (Emphasis sic). *Rogers* at ¶ 23, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶23} In this case, the state raised the issue of allied offenses during the sentencing hearing when the state told the court that it was of the opinion that none of the offenses were allied. Locke did not object. "[F]orfeiture is the failure to timely assert a right or object to an error." *Rogers* at ¶ 21. "'It is a well-established rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" *Id.,* quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15.

{¶24} Based on the foregoing principles, Locke has not shown that the trial court committed plain error by not merging his convictions. Although not discussed by Locke with specificity, his two convictions for unlawful sexual conduct with a minor clearly do not merge because the indictment specifies that they occurred on different dates: April 28, 2014 and May 30, 2014. Where the defendant is charged with conduct occurring on different dates, the offenses are not allied on the face of the indictment. *State v. Liuzzo*, 8th Dist. Cuyahoga No. 99545, 2013-Ohio-5028, ¶ 11. The prosecutor also stated during the sentencing hearing that the sexual conduct "didn't happen just one time. She

told us that it happened many times, in his house and in his apartment."

**{¶25}** Locke's convictions for unlawful sexual conduct with a minor and pandering also do not merge because they are of dissimilar import. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) * * * if the harm that results from each offense is separate and identifiable." *Ruff*, Slip Opinion No. 2015-Ohio-995, paragraph two of the syllabus. Locke's acts of having sex with the victim created a harm that was separate and identifiable from his act of filming that sex — there are two different acts, or sets of acts, to consider. "[O]ffenses are not allied offenses of similar import if they are not alike in their significance and their resulting harm." *Id.* at ¶ 21. Here, the act of filming a minor having sex has an altogether different level of significance and resulting harm than the act of having sexual intercourse with a minor.

**{¶26}** Locke's conviction for possessing criminal tools also does not merge with any of the other counts because the creation of each pornographic video is separate and distinct from the continuing possession of that video. *State v. Hadding*, 3d Dist. Auglaize No. 2-12-14, 2013-Ohio-643, ¶ 18. In *Hadding*, the court found that the defendant's convictions for pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1) ("Create * * * any obscene material") and (A)(5) ("possess * * * any obscene material") were not allied offenses of similar import:

> Hadding first created the video and cell phone image of [the victim], and then continued to possess this obscene material until his arrest on September 17, 2011. We also find that Hadding had one animus, or improper motive, for initially creating the obscene material, and a separate

animus for continuing to possess it after its creation.* * *

> We disagree with Hadding that his initial creation and then continued possession of the video and images constituted a single course of conduct lasting weeks, and even months. Rather, we find that Hadding had a separate motive to create the obscene material from his motive to continue to possess it for his personal use, and that this separate animus results in separate offenses.

*Hadding* at ¶ 18-19.

{¶27} Locke pleaded guilty to five counts of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A)(1), ("Create * * * any material that shows a minor participating or engaging in sexual activity"). Locke's pandering offenses were complete when Locke created each video. He then continued to possess the cell phone on which he created those videos until the phone was seized by police. It was the possession of the cell phone with the illegal video on it that constituted the offense of possessing criminal tools.

{¶28} As to Locke's five pandering convictions, "[e]ach child pornography file or image that is downloaded is 'a new and distinct crime.'" *State v. Mannarino*, 8th Dist. Cuyahoga No. 98727, 2013-Ohio-1795, ¶ 53, quoting *State v. Eal*, 10th Dist. Franklin No. 11AP-460, 2012-Ohio-1373, ¶ 93. This court has held that "multiple convictions are allowed for each individual image because a separate animus exists every time a separate image or file is downloaded and saved." *State v. Hendricks*, 8th Dist. Cuyahoga No. 92213, 2009-Ohio-5556, ¶ 35.

{¶29} The state contends that Locke's pandering convictions are not allied because the conduct of creating each video was committed separately and because each offense

was committed with a separate animus. It is unclear from the record how many images or files Locke made, downloaded, or saved. During the sentencing hearing, the prosecutor stated that there were five separate videos.[1] That statement alone, Locke contends, is insufficient to show that the offenses were not allied, especially because he never stipulated that the offenses were not allied. But by failing to seek the merger of his convictions as allied offenses of similar import in the trial court, Locke has forfeited his allied offenses claim for appellate review. *Rogers*, Slip Opinion No. 2015-Ohio-2459, ¶ 21. The burden was on Locke to show that the trial court committed plain error in failing to merge his convictions, not on the state to show that the offenses should not have not merged. Said another way, Locke is required to demonstrate a reasonable probability that his convictions constituted allied offenses of similar import. *Id.* at ¶ 29. Locke has failed to carry that burden by failing to demonstrate any probability that he has, in fact, been convicted of allied offenses of similar import committed with the same conduct and with the same animus. Thus, he is unable to show any prejudicial effect on the outcome of the proceeding. *Id.* at ¶ 25.[2]

{¶30} The second assignment of error is overruled.

**Sex Offender Classification**

---

[1]In its sentencing memorandum, the state wrote that "Charles Locke is a police officer who had sex with a child while wearing his uniform and recorded it on his cell phone — twice."

[2]We do note, however, that Locke has a remedy for defense counsel's failure to argue that the convictions are for allied offenses of similar import by petitioning for postconviction relief and presenting evidence outside the record. *See Rogers*, Slip Opinion No. 2015-Ohio-2459 at ¶ 14.

**{¶31}** Sua sponte, we raise the issue of Locke's sex offender classification.  At his plea hearing, the trial court informed Locke that he would be classified as a Tier II sex offender.  *See* R.C. 2950.01(F).  The court also informed Locke of his notification requirements pursuant to a Tier II sex offender designation.  During the sentencing hearing the trial court again informed Locke of the notification requirements of a Tier II sex offender, but mistakenly stated that Locke was a Tier III sex offender.  In its sentencing journal entry, the court indicated that Locke was a Tier III sex offender.

**{¶32}** A "Tier II sex offender/child-victim offender" includes a sex offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to pandering sexually oriented matter involving a minor under R.C. 2907.322 or unlawful sexual conduct with a minor under R.C. 2907.04.  R.C. 2950.01(F)(1)(a)-(b).  By pleading guilty to these crimes, Locke is a Tier II sex offender.

**{¶33}** Locke's classification as a Tier III sex offender is hereby vacated and Locke is to be reclassified as a Tier II sex offender and the journal entry amended to reflect this classification.

**{¶34}** Case affirmed in part and reversed in part.  On remand, the trial court must determine whether Locke's convictions should run consecutive to each other and, if so, make the proper findings and incorporate those findings into its sentencing journal entry.  The trial court is further ordered to classify Locke as a Tier II sex offender according to law and to indicate such in its journal entry.

**{¶35}** Judgment affirmed in part, reversed in part, vacated in part and remanded.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR